22764. DAVIS *v.* THE STATE.

DECIDED APRIL 5, 1933. REHEARING DENIED MAY 2, 1933.

*R. Douglas Feagin, J. E. Feagin,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

MACINTYRE, J. Wiley Davis, a negro man, was convicted of an assault with intent to rape upon a white girl. The defendant made a motion for a new trial, based upon the general grounds and three special grounds, and, the motion having been overruled, he excepted.

The indictment charges that, on April 7, 1932, the defendant did "make an assault upon [the named victim], a female, with the intent then and there to have carnal knowledge of the said female forcibly and against her will, and did then and there strike, beat, and wound the said female, and the said defendant was heretofore tried in Bibb superior court on June 28, 1928, under indictment No. 599 of said court for the offense of assault with intent to rape, and was sentenced to the penitentiary." The latter allegation was inserted in the indictment in order to comply with the ruling of the Supreme Court in the case of *Tribble* v. *State,* 168 *Ga.* 699 (148 S. E. 593). The substance of the ruling in that case was that a previous conviction of a felony carrying a penitentiary sentence should be alleged in the indictment, and that the effect of such allegation and proof thereof would be to have imposed upon the defendant, in

case of his conviction for another felony, the maximum sentence provided by law.

■ There was evidence for the State to the effect that in 1930 the parents of the victim traded at Godfrey's store, and that the defendant, who was Godfrey's delivery boy, frequently delivered groceries at the victim's home. Almost every time the girl would go to Godfrey's store the defendant would say "hello" to her, or wink at her with one eye; and when she would leave the store the defendant would go in the back yard and say "hello," or something, to her; and she would complain to her mother of the conduct of the defendant. On April 7, 1932, the date the indictment alleges the crime was committed, she saw the defendant alone in front of the store next to Mr. Waldorf's store at about nine o'clock at night. She went into Waldorf's store, which is just outside the city limits of Macon, and about a block and a half from where she lived in the city limits. When she came out of the store the defendant was standing where he was when she went in. As she crossed the street about two doors down to the side on which the Raines store was located, the defendant "hollered" at her. She "picked up a little bit." The defendant was walking on the other side of the street, following her. He said: "Hello, Sugar, wait a minute." She walked faster. "He said that two or three times." When she was going up the street she saw a lady sitting in her house. There is a vacant lot just before you reach the victim's house, and after the defendant passed the people in the house he ran up beside her and tried to put his hand upon her arm when she stepped in her yard. "He picked up a fast step and went on up the street." There was no one on the victim's porch, nor were there any lights on said porch. The victim was about sixteen years old.

The defendant pleaded an alibi. The burden was upon him to sustain this plea to the reasonable satisfaction of the jury. The girl alleged to have been assaulted positively identified the defendant. The jury resolved this issue of fact in favor of the State.

"In order to authorize a conviction for the offense of assault with intent to rape, the evidence must show beyond all reasonable doubt, (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) a purpose to carry into effect this intent with force and against the consent of the female. If any of these three elements is lacking, the offense is not made out." *Dorsey* v. *State,*

108 *Ga.* 477 (34 S. E. 135). In *Thomas* v. *State,* 99 *Ga.* 38, 44 (26 S. E. 748), Justice Atkinson, speaking for the court, said that "there need not be an actual present ability to commit a violent injury upon the person assailed, but if there be such a demonstration of violence, coupled with an apparent ability to inflict the injury, so as to cause the person against whom it is directed reasonably to fear the injury unless he retreat to secure his safety, and under such circumstances he is compelled to retreat to avoid an impending danger, the assault is complete, though the assailant may never have been within actual striking distance of the person assailed." "While a mere threat or menace to commit a violent injury upon the person of another is not sufficient to constitute an assault, yet where the threat or menace is accompanied by an apparent attempt to commit such an injury, and its consummation is prevented either by the act [retreat in the instant case] of the person upon whom the assault is threatened or by the interposition of a third person, the violence has commenced and the assault is complete." *Rutherford* v. *State,* 5 *Ga. App.* 482 (63 S. E. 570). Do the facts of this case show an assault? They show that the girl had been followed by the defendant for a block and a half, and that after she had passed a house in which she saw a lady the defendant ran up beside her near a vacant lot next to her home and attempted to put his hand on her arm after having just previously called to her, "Hello, Sugar, wait a minute," and she then stepped into her own yard, and, thus retreating, prevented the injury. What injury? At least an unlawful imposition of his hands upon her in lust, which would have been a battery and would have been a greater outrage than to touch her in anger, and equally a breach of the peace. *Goodrum* v. *State,* 60 *Ga.* 509, 512.

Next, do the facts in this case show an intention on the part of the accused to have carnal knowledge of the victim forcibly and against her will? The evidence shows that several times previous to the occurrence alleged in the indictment the defendant would say, "Hello," and would wink at the girl with one eye when she went to the store; and when she would leave the store he would go into the back yard and say, "Hello," or something else to her. At about nine o'clock at night on April 7, 1932, the day alleged in the indictment, when she went to the store located in the outskirts of Macon to make some purchases, and came out to return home, the

defendant followed her, saying two or three times, "Sugar, wait a minute." She quickened her pace when he said this, and she and the defendant, who was following her, passed the house in which she saw some people. After they had passed the house, the defendant ran after her, passed a vacant lot, and came up beside her near the vacant lot, in front of her home, where there were no persons or lights on the porch, and tried to put his hand upon her arm. She retreated into her yard, thus preventing the attempted assault. What was the defendant's purpose? To rob, frighten, have carnal knowledge of the girl,—or what was his desire? Did not the jury have the right to say, under all the facts and circumstances deducible from the evidence, that he intended to have carnal knowledge of her, and, on account of the difference of race and social standing of the parties involved, determine whether there was a purpose to have carnal knowledge forcibly and against the girl's will? In *Dorsey* v. *State,* supra, a case in which a negro man was charged with an assault with intent to rape upon a white woman, Justice Cobb, speaking for the court, said: "The fact that the alleged assailant is a negro may, in cases like the one now under consideration, be properly considered for one purpose, and that is, to rebut any presumption that might otherwise arise in favor of the accused that his intention was to obtain the consent of the female, upon failure of which he would abandon his purpose to have sexual intercourse with her." In the case at bar there is no evidence whatever that remotely indicates that the girl was not virtuous, and if the jury had the right under the evidence to find that the defendant intended to have carnal knowledge of the female, did not they have the right to further determine that on account of the difference of race and social standing and all the facts and circumstances of this case, he intended to have carnal knowledge of her forcibly and against her will? If the man and the girl had been of the same race and approximately of the same social standing, and more particularly if they had been on any sort of terms of intimacy, a very different question would be presented. At least, it would be just as reasonable to assume that there was no intent to have intercourse at all, or, if so, that the intent was to cajole the female into consenting; but ordinary logic, as well as authorities, would authorize the jury to find that the negro, in making advances of the kind above enumerated upon a white girl who had already complained of his

threat to be familiar with her, intended to have intercourse forcibly and against her will. It is not necessary for the State to show that the defendant expressed in so many words any such intention, to enable the jury to arrive at the fact that he so intended. The intention may be gathered from the circumstances of the case as proved. *Jackson* v. *State,* 91 *Ga.* 322, 323 (18 S. E. 132, 44 Am. St. R. 25).

"In seeking the motives of human conduct, the jury need not stop where the proof ceases; inferences and deductions from human conduct are proper to be considered where they flow naturally from the facts proved." *Ware* v. *State,* 67 *Ga.* 349, 352. In the case of *Darden* v. *State,* 97 *Ga.* 407 (25 S. E. 676), the defendant, as in the instant case, did not touch the girl, but only the cover of her bed at midnight, and desisted, or was prevented by the screams of the girl, from committing the injury, which the jury found would have been rape under these circumstances. This finding was approved in *Dorsey* v. *State,* supra. See also in this connection *Brittain* v. *State,* 41 *Ga. App.* 577 (2) (153 S. E. 622). The case of *Little* v. *State,* 42 *Ga. App.* 222 (155 S. E. 352), relied upon by plaintiff in error, is differentiated by its facts from the instant case, in that in this case the defendant on previous occasions had winked at the girl, and on the occasion in question had used familiar and endearing terms to her,—all of which might indicate the state of his mind and what his intentions were. We hold that the evidence authorized the verdict of guilty in the case at bar, and that the trial judge did not err in overruling the general grounds of the motion for a new trial.

■ Special ground 1 begins as follows: "Because the verdict in the case is contrary to the following charge of the court:" The charge referred to is then set out in the ground, and immediately thereafter the ground concludes in this language: "And for this reason is contrary to law." The verdict is authorized by the evidence and there is no merit in the ground. "A complaint in a motion for a new trial that the verdict is contrary to a stated part of the charge is equivalent to a complaint that it is contrary to law; and it is without merit where, under the law, the verdict is authorized by the evidence." *Morakes* v. *State,* 158 *Ga.* 114 (3) (123 S. E. 687).

■ Special ground 2 complains of the following charge of the

court: "An assault is an attempt to commit a violent personal injury upon another. It is not a part of an assault that there should be any touching of the alleged victim by the defendant, but it is only necessary to show that there was an intention on the part of the defendant to commit the offense charged in the indictment, and that intention was manifested by such acts as would to any reasonable purpose be an apparent attempt to carry into effect the illegal purpose charged in the indictment, and that his acts went to the extent of convincing any reasonable person under similar circumstances that an assault with intent to rape was about to be committed, and that the alleged victim was called upon to retreat or defend herself. If these contentions are shown beyond a reasonable doubt, the assault would be complete, whether he had touched the alleged victim or not." The assignment of error is as follows: "This charge, movant contends, is manifest error, and does not correctly define the offense of assault with intent to rape, nor does it define correctly the elements of the offense, one of which is force and lack of consent on the part of the female. This charge of the court is in effect an instruction to the jury that the mere fact that the victim retreated, or that the jury might think she was called upon to defend herself against something,—the charge does not say what,— would be sufficient to make out the case, and is error, for this would not be sufficient to make a case for assault with intent to rape, as all the elements of this charge would not be clearly shown beyond a reasonable doubt." It will be observed that in this particular part of the charge the court was instructing the jury as to an assault. The record shows that he elsewhere charged the jury what constitute the elements of the offense of assault with intent to rape. This excerpt does say that it is necessary to show what the victim was defending herself against, to wit, the offense charged in the indictment. We hold that the charge under consideration is not erroneous for any reason assigned.

The third, and last, special ground complains of the following charge of the court: "On the other hand, the defendant contends he might have had many other purposes in mind, that he might have been only endeavoring to frighten [the victim], and various other hypotheses to account for his conduct, as well as the assumption he intended to commit a rape." The defendant contends that this charge was error because he made no such conten-

tion; that the defense was "alibi;" that he made no assault whatever upon the girl; and that the court assumed in his charge that the defendant admitted that he did the things testified to by the girl, but contended that his purpose was not as the State contended. Both before and after the charge complained of, the court informed the jury that the defendant contended that he had an alibi, and instructed the jury fully upon the law of alibi. We quote the last charge given upon that subject: "The defendant contends he was not present at the time when he is charged with making the assault with intent to rape, that he was at another place, and he relies on an alibi to that extent to prove the impossibility of his having committed the offense because he was not there. He also contends he didn't approach her or speak to her, and did not beat her as charged in the indictment. If there is any reasonable doubt about those contentions, you ought to give him the benefit of the doubt and acquit him." The court also instructed the jury, in the latter part of his charge, as follows: "You are the sole and exclusive judges of the facts. The court has no opinion as to the facts, and if I had one, it would be improper to express it to you; and if I have inadvertently expressed any opinion you must disregard it all, . . because you have the sole responsibility of finding the facts in the case." It may also be observed that the charge complained of immediately followed the following charge: "It must also be proved beyond a reasonable doubt that the defendant's intent was to commit the offense of rape. The State contends that there could be but one purpose in the acts and conduct of the defendant and that was to commit rape." "To ascertain whether a particular part of a charge, excepted to as expressing an opinion on the facts, is fairly liable to such exception, the whole charge, written and in the record, may be considered." *Jones* v. *State,* 37 *Ga. App.* 632 (141 S. E. 216), citing *Nutzel* v. *State,* 60 *Ga.* 264. See also *Olliff* v. *Howard,* 33 *Ga. App.* 778, 782 (127 S. E. 821); *Gower* v. *State,* 166 *Ga.* 500 (6) (143 S. E. 593); *Howard* v. *Echols,* 31 *Ga. App.* 420 (2), 423 (120 S. E. 815). In the latter case, an action for seduction, this court held that the trial judge erred in so charging as to express an opinion that intercourse occurred between the parties as the plaintiff contended. Judge Jenkins, speaking for a united court, said, however: "If the court anywhere else in the charge had fully submitted the defendant's contention that he

never at any time had with the plaintiff's daughter the intercourse alleged, we should be disposed to hold that the error here was so slight as to be negligible, but we have examined the charge carefully, and find that this issue was nowhere clearly presented."

Standing alone, the charge was perhaps erroneous, but when considered in connection with its context, and in the light of the charge as a whole, we are satisfied that it is not fairly susceptible to the criticism that the court assumed that the defendant admitted that he had said and done those things attributed to him by the alleged victim, and thus destroyed his defense of alibi. We think that the charge conveys the idea that if the jury should find against the alibi, and that if they should further find that the defendant was guilty of the conduct attributed to him by the State's witness, this would not necessarily require a conviction, but would be subject to the various explanations suggested in the charge. We hold that the ground does not disclose reversible error.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*